UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
--------------------------------------------------------
                                                      :
JESSICA STANDEN,                      :      Case. No. 1:15-CV-482
                                                      :
            Plaintiff,                            :
                                                      :
      v.                                            :      OPINION & ORDER
                                                      :      [Resolving Doc. 1]
CAROLYN W. COLVIN,                   :
ACTING COMMISSIONER OF          :
SOCIAL SECURITY,                       :
                                                      :
            Defendant.                         :
                                                      :
--------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this social-security disability benefits case, Plaintiff Jessica Standen objects to the

Magistrate Judge's Report and Recommendation (R&R), which recommends affirming the

Administrative Law Judge's ("ALJ") denial of benefits.[1]  The ALJ has substantial evidence to

support his decision.

However, as the R&R acknowledges, the ALJ failed to properly analyze Standen's claims

under Listing 14.09.  While the Magistrate Judge found this to be harmless error, this Court

concludes it was not.

The Court **ADOPTS** the recommendation of the Magistrate Judge and **AFFIRMS** the

denial of benefits by the ALJ, except as to the effect of failing to analyze Plaintiff's case under

Listing 14.09.  On this issue, the Court **REMANDS** the case for further consideration by the

ALJ.

---

[1] Doc. 20 (Report and Recommendation); Doc. 21 (Objection).

Case No. 1:15-CV-482
Gwin, J.

## I.      Background

On September 1, 2011, Plaintiff Standen filed applications for Supplemental Security

Income benefits and Disability Insurance benefits.[2] The application was based on arthritis,

anxiety, insomnia, depression, and fibromyalgia.   She alleged a June 1, 2009 disability onset

date.[3] After her applications were denied initially and upon reconsideration, Plaintiff requested a

hearing before an ALJ.[4]

Standen appeared with counsel at a hearing before ALJ Thomas M. Randazzo on October

2, 2013.[5]

On October 31, 2013, the ALJ determined that Standen was not entitled to Supplemental

Security Income or Disability Insurance.[6] The ALJ's findings can be summarized as follows:

1.  The claimant meets the insured status requirements of the Social Security Act
    through December 31, 2013.

2.  The claimant has not engaged in substantial gainful activity since June 1,
    2009, the alleged onset date.

3.  The claimant has the following severe impairments: rheumatoid arthritis,
    fibromyalgia, depression, and anxiety.

4.  The claimant does not have an impairment or combination of impairments that
    meets or medically equals the severity of one of the listed impairments in 20
    C.F.R. Part 404, Subpart P, Appendix 1.

5.  After careful consideration of the entire record, the undersigned finds that the
    claimant has the residual functional capacity to perform a reduced range of
    light work with the following nonexertional limitations. She can lift up to
    twenty pounds occasionally and up to ten pounds frequently. She can stand
    and walk for six hours and sit for six hours in an eight-hour workday, with
    normal breaks. She can frequently climb ramps and stairs but she can never
    climb ladders, ropes, or scaffolds. She can frequently balance, stoop, kneel,

---

[2] Doc. 20  at 1.
[3] *Id.*
[4] *Id.* at 1-2.
[5] *Id.* at 2.
[6] *Id.*

Case No. 1:15-CV-482
Gwin, J.

crouch, and occasionally crawl. She must avoid all exposure to hazardous machinery and unprotected heights. She is limited to frequent handling, fingering and feeling with bilateral hands. She is limited to superficial interaction with co-workers and the public, such as interaction that is of a brief duration and for a specific purpose. The claimant requires a sit/stand option for 1-2 minutes duration every half hour without being off task. In addition, the claimant will be off task 5% of the time.

6.  The claimant is unable to perform any past relevant work.

7.  The claimant was born on August 18, 1982 and was 26 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age.

8.  The claimant has at least a high school education and is able to communicate in English.

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 1, 2009, through the date of this decision.[7]

Standen filed this complaint.[8]  She argues that: (1) the ALJ erred in analyzing Plaintiff's severe impairments under Listing 1.02 and Listing 1.04 instead of Listing 14.09 for rheumatoid arthritis; (2) the ALJ erred when the ALJ did not give controlling weight to the opinions of treating rheumatologist Dr. Kuchynski; (3) the ALJ's credibility determination is unsupported by substantial evidence; (4) the ALJ erred in relying upon the vocational expert's testimony in response to an incomplete hypothetical question.[9]

---

[7] *Id.* at 12-13.
[8] Doc. 1.
[9] Doc. 14.

Case No. 1:15-CV-482
Gwin, J.

The Court referred the matter to Magistrate Judge Kenneth McHargh. Magistrate Judge McHargh issued a Report and Recommendation, finding that the ALJ's determination was supported by substantial evidence and recommending that the Court deny Standen's appeal.[10] Specifically, the R&R concluded that (1) the ALJ should have additionally (or alternatively) analyzed Plaintiff under Listing 14.09, but Judge McHargh found this was harmless error that does not require remand; (2) the ALJ properly considered the opinion evidence under the treating source rule; (3) the ALJ properly assessed Plaintiff's credibility; and (4) the hypothetical presented to the vocational expert at the hearing adequately reflected Plaintiff's RFC limitations.[11]

Standen now objects to the R&R.[12]  This Court reviews the objections *de novo*.[13]


## II.    Legal Standard

In reviewing an ALJ's disability determination under the Social Security Act, a district court is limited to reviewing whether the ALJ's decision is "supported by substantial evidence and is made pursuant to proper legal standards."[14]  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[15]  A district court should not try to resolve "conflicts in evidence or decide questions of credibility,"[16] and may not reverse an ALJ's decision when substantial evidence supports it, even if the court would have made a different decision.[17]

---

[10] Doc. 20  at 1.
[11] Doc. 20
[12] Doc. 17.
[13] 28 U.S.C. § 636(b)(1) (requiring *de novo* review of the claimant's objections to a report and recommendation).
[14] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see also* 42 U.S.C. § 405(g).
[15] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted).
[16] *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).
[17] *Siterlet v. Sec. of Health and Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987).

Case No. 1:15-CV-482
Gwin, J.

To establish disability under the Social Security Act, Plaintiff must show that she cannot engage in any substantial gainful activity because of a "medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months."[18] Plaintiff's impairment must prevent her from doing her previous work or any other work existing in significant numbers in the national economy.[19]

### III.   Discussion

*A. Listing 14.09*

At Step Three of the disability evaluation process, the ALJ must evaluate whether the claimant's impairments satisfy the requirements of any of the medical conditions enumerated in the Listings of Impairments, or Listings.  If the claimant does not meet a Listing, then the ALJ continues on to Steps Four and Five of the analysis to determine if the claimant's impairment prevents her from doing her past relevant work or other work in the national economy that accommodates the claimant's residual functional capacity.

Plaintiff Standen says that the ALJ failed to properly evaluate whether her condition met or equaled Listing 14.09, Section D.[20]  Instead, the ALJ evaluated Standen's claim under Listings 1.02 (major dysfunction of the joint(s) (due to any cause)) and 1.04 (disorders of the spine).[21]  Section D of Listing 14.09 requires a claimant to show:

> Repeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
>
> 1. Limitations of activities of daily living.

---

[18] *See* 42 U.S.C. § 423(d).
[19] *Id.*
[20] Doc. 14 at 15-18.
[21] Doc. 20  at 22.

Case No. 1:15-CV-482
Gwin, J.

>    2. Limitation in maintaining social functioning.
>
>    3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.[22]

The Listings explain, "Listing-level severity is shown in . . . 14.09D by inflammatory arthritis that involves various combinations of complications of one or more major peripheral joints or other joints, such as inflammation or deformity, extra-articular features, repeated manifestations, and constitutional symptoms or signs."[23]

Magistrate Judge McHargh correctly agreed with Plaintiff that "the ALJ should have additionally (or alternatively) analyzed Plaintiff's rheumatoid arthritis and fibromyalgia under Listing 14.09."[24]

However, Magistrate Judge McHargh then concluded that the failure to analyze Plaintiff's application under Listing 14.09 "is harmless error and does not require remand."[25]  The claimant must show that she was some way prejudiced or deprived of substantial rights because of this procedural error.  Magistrate Judge McHargh concluded that the Plaintiff did not meet her burden, saying that, "[i]n her brief, Plaintiff does not point to any evidence that was not considered by the ALJ in his decision, much of which was appropriately discredited as discussed."[26]

The Court disagrees with the conclusion that the ALJ's error was harmless.  The Sixth Circuit has found that completely failing to review a disability application under the requisite Listing *is* harmful error: "[T]he regulations indicate that if a person is found to meet a Listed Impairment, they are disabled within the meaning of the regulations";

---

[22] 20 C.F.R. Part 404, Subpart P., Appx. 1, Listing 14.09D.
[23] *Id.* at § 14.00(D)(6)(e)(ii).
[24] Doc. 20  at 24-25 (collecting citations that rheumatoid arthritis and fibromyalgia need to be evaluated under Listing 14.09, notwithstanding analysis under 1.02 and 1.03).
[25] *Id.* at 25.
[26] *Id.*

6

Case No. 1:15-CV-482
Gwin, J.

therefore, failure to address a relevant listing impairs substantive rights, "regardless of what the ALJ's conclusions would have been at Steps Four and Five."[27]

The Sixth Circuit has found that correcting the failure to evaluate a requisite listing is not "merely a formalistic matter of procedure."[28] Remand is required. This conclusion is still persuasive even in a case such as this, where it is not immediately apparent that the Plaintiff would meet the Listing. Nevertheless, "the ALJ needed to actually evaluate the evidence, compare it to . . . the Listing, and give an explaining conclusion in order to facilitate meaningful judicial review."[29] District Courts in this Circuit have remanded on this ground when faced with the specific failure at issue in this case: failure to review rheumatoid arthritis under Listing 14.09.[30]

It is not sufficient for this Court to conclude after the fact that Plaintiff did not meet Listing 14.09, Section D. Analysis in the first instance by the ALJ is required.

*B. Treating Source Rule*

Plaintiff argues the ALJ erred in failing to assign controlling weight to Plaintiff's treating rheumatologist, Dr. Kuchynski.[31] In his analysis of the opinion evidence of record, the ALJ assigned "less weight" to Dr. Kuchynski's statement of Plaintiff's

---

[27] *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011).
[28] *Id.*
[29] *Id.*
[30] *See Hakkarainen* ex rel. *Blanton v. Astrue*, No. 1:10-cv-2463, 2012 WL 398595 at *13 (N.D. Ohio Jan. 19, 2012) (Report and Recommendation) ("To the extent that the Commissioner argues that evidence otherwise supports the conclusion that the claimant's rheumatoid arthritis did not meet or medically equal Listing 14.09, such post hoc rationale is not persuasive, as the ALJ's rationale is under consideration, not defense counsel's"); *see also Christephore v. Comm'r Soc.Sec.*, No. 11-13547, 2012 WL 2274328 at *10 (E.D. Mich. June 18, 2012) ("The Court will not follow the Commissioner's suggestion that it divine what the ALJ might have been thinking at Step Three.").
[31] Doc. 14 at 18-22.

7

Case No. 1:15-CV-482
Gwin, J.

residual functional capacity (RFC).[32] The ALJ still recognized Dr. Kuchynski as a

treating source.[33] Further, the ALJ assigned "significant weight" to the opinions of the

State Agency medical consultants.[34]

Magistrate Judge McHargh concluded that the ALJ properly considered the

opinion evidence under the treating source rule.[35] The Court agrees with Magistrate

Judge McHargh's conclusion.

Under the treating physician rule, "treating source opinions must be given

'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by

medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion

'is not inconsistent with the other substantial evidence in [the] case record."[36]

However, an ALJ is allowed to give a treating source's opinion less controlling

weight so long as he gives "good reasons" for doing so. "Good reasons" are reasons that

are sufficiently specific to make clear to any subsequent reviewers the weight given to the

treating physician's opinion and the reasons for that weight.[37]

In deciding the weight to be given to the treating physician's opinion, the ALJ

must consider factors such as (1) the length of the treatment relationship and the

frequency of the examination, (2) the nature and extent of the treatment relationship, (3)

the supportability of the opinion, (4) the consistency of the opinion with the record as a

whole, (5) the specialization of the source, and (6) any other factors that tend to support

---

[32] *Id.*
[33] *Id.*
[34] *Id.*
[35] Doc. 20 at 14-18.
[36] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)).
[37] *Id.*

8

Case No. 1:15-CV-482
Gwin, J.

or contradict the opinion.[38] The ALJ is not required to provide "an exhaustive factor-by-

factor analysis."[39] However, "the reasons must be supported by the evidence in the record

and sufficiently specific to make clear the weight given to the opinion and the reasons for

that weight."[40]

> Here, the ALJ wrote the following about Dr. Kuchynski's opinion:

> The undersigned gives less weight to Dr. Kuchynski's treating source
> statements of the claimant's residual functional capacity for the following
> reasons. First, the undersigned finds that the extreme limitations to which
> she opined are not consistent with her own longitudinal history of physical
> examination findings in her treatment notes. Second, although Dr.
> Kuchynski's treatment notes indicate that she has adjusted or added
> medications to the claimant's daily regimen to accommodate flare-ups of
> her symptoms, these treatments have all been conservative and/or short-
> term, such as Prednisone bursts. Third, Dr. Kuchynski's assessment is not
> consistent with the claimant's actual performance of activities of daily
> living to which she testified on a general basis, despite exacerbations of
> her pain symptoms. Fourth, the undersigned finds that the State Agency
> medical consultant's physical and mental assessments are more consistent
> with the medical record as a whole than Dr. Kuchynski opined.[41]

> This Court agrees with Magistrate Judge McHargh that the ALJ's analysis

sufficiently explained the "good reasons" for giving less weight to Dr. Kuchynski's

opinion.

> Plaintiff relies heavily on *Rogers v. Commissioner of Social Security* to argue that

the ALJ's conclusion was improper.[42] *Rogers* is inapposite. *Rogers* concerns an ALJ's

failure to find that fibromyalgia and rheumatoid arthritis were severe impairments, in

---

[38] *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 747 (6th Cir. 2007).
[39] *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011).
[40] *Brasseur v. Comm'r of Soc. Sec.*, 525 F. App'x 349, 349 (6th Cir. 2013).
[41] Doc. 13 at 24.
[42] 486 F.3d 234 (6th Cir. 2007). Plaintiff has added no new arguments in response to Magistrate Judge
McHargh's Report and Recommendation. Rather, Plaintiff reiterates her initial arguments. Doc. 21 at 1-
2.

9

Case No. 1:15-CV-482
Gwin, J.

contradiction to Rogers' treating physicians opinions.[43]   The Sixth Circuit reversed,

pointing out that the ALJ had not provided *any* explanation of the relevant factors when

the Rogers ALJ discounted the treating physician's opinion.[44]   Moreover, the ALJ's

decision belied a record replete with evidence from multiple treating doctors about

Rogers' fibromyalgia and rheumatoid arthritis.[45]

   In contrast, here the ALJ found that fibromyalgia and rheumatoid arthritis were

severe impairments.  The ALJ gave good reasons for his decision to give less weight to

Dr. Kuchynski's opinion.  The ALJ did not discredit the nature of the disease, as the ALJ

appeared to have done in *Rogers*.  Rather, the ALJ properly weighed the evidence and

assigned weights to the various physicians.  The ALJ specifically noted good reasons for

discounting Dr. Kuchynski's opinions: internal inconsistencies, successful treatments and

inconsistencies with Plaintiff's testimony.   The ALJ's decision is supported by the

substantial evidence.[46]

---

[43] *Rogers*, 486 F.3d at 244-45.
[44] *Id.*
[45] *Id.*
[46] Plaintiff's other arguments fail.  First, Plaintiff contends that the ALJ improperly discredited Dr. Kuchynski's opinion by pointing out that her treatment was "conservative and/or short."  Plaintiff contends that this characterization is improper because of the "clear litany of medications Plaintiff takes on a daily basis."  Doc. 14 at 21.  However, simply counting the medications Plaintiff takes is not a proper method of determining Plaintiff's medical condition.
      Second, Plaintiff contends that the ALJ improperly discredited Dr. Kuchynski's opinion by pointing out that the doctor's assessment was inconsistent with the Plaintiff's daily activities.  Plaintiff contends that "Plaintiff's mere participation in daily activities does not preclude a finding of disability, particularly where chronic pain associated with severe impairments of fibromyalgia and rheumatoid arthritis are concerned."  *Id.* at 21.  However, under the treating source rule, the ALJ is specifically instructed to consider whether the treating doctor's opinion is "consistent with the record as a whole."  Considering daily activities here is proper.  *See Calvin v. Comm'r of Soc. Sec.*, 437 F. App'x 370, 371 (6th Cir. 2011).  Moreover, there is no indication that the ALJ misconstrued the testimony as to Plaintiff's daily activities.  Although Plaintiff may require help and takes multiple breaks, this is reconcilable with the ALJ's conclusion that, "Dr. Kuchynski's assessment is not consistent with the claimant's actual performance of activities of daily living to which she testified on a general basis, despite exacerbations of her pain symptoms."  Doc. 13 at 24.  *See, e.g.*, Doc. 13 at 45-69, 527-28 (Plaintiff testified that she would stand and walk to go shopping for at least 20 minute periods;  Dr. Kuchynski stated that Plaintiff could only stand or walk for 10 minutes.).  See *infra* for further discussion of the ALJ's credibility assessment.

10

Case No. 1:15-CV-482
Gwin, J.

*C. Plaintiff's Credibility*

Plaintiff also alleges that the ALJ failed to properly evaluate her credibility.[47] The ALJ concluded that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible."[48]

However, Plaintiff fails to demonstrate that the ALJ's credibility assessment is not supported by substantial evidence. 20 C.F.R. § 404.1529 describes a two-part process for assessing the credibility of an individual's subjective statements about his or her symptoms.  First, the ALJ must determine whether a claimant has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged; then the ALJ must evaluate the intensity and persistence associated with those symptoms to determine how those symptoms limit a claimant's ability to work.

When evaluating the intensity and persistence of a claimant's symptoms, consideration is given to objective medical evidence and other evidence, including: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness,

---

Finally, the ALJ properly gave good reasons for assigning significant weight to the state agency consultants' opinions. As correctly noted by Magistrate Judge McHaugh, an "ALJ's decision to accord greater weight to state agency physicians over [claimant's] treating sources was not, by itself, reversible error." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009).  Here, the ALJ clearly explained that he found the state agency opinions supported by objective evidence on the record, as well as by Plaintiff's testimony as to activities of daily living.  See *infra* for further discussion of the ALJ's credibility assessment.

[47] Doc. 14 at 22-24. Plaintiff has added no new arguments in response to Magistrate Judge McHargh's Report and Recommendation.  Rather, Plaintiff reiterates her initial arguments.  Doc. 21 at 2.

[48] Doc. 13 at 21.

Case No. 1:15-CV-482
Gwin, J.

and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms.[49]

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility. Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence."[50]

There is substantial record evidence to support the ALJ's negative credibility determination.  For example, the ALJ recognized that certain activities exacerbated Plaintiff's symptoms and caused acute episodes of pain.  Nevertheless, the ALJ properly considered claimant's testimony that "she has maintained primary responsibility over her health and physical wellbeing of herself and her children."[51] The ALJ went on to explain that Plaintiff takes care of herself, two cats and a guinea pig, Plaintiff's mother (who is disabled secondary to fibromyalgia).[52]  The ALJ noted that Plaintiff performs household duties and cooks full meals.  "In addition, she is able to shop for groceries at small grocery stores and she is physically able to drive."[53]  The ALJ noted that Plaintiff's 10-year-old daughter and other members of the family sometimes help with activities.[54]  But nevertheless, the ALJ found that based on the evidence in the record, Plaintiff's "level of

---

[49] 20 C.F.R. § 404.1529(c).
[50] *Calvin*, 437 F. App'x at 371 (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir.1997)).
[51] Doc. 13 at 45-69.
[52] *Id.* at 23.
[53] *Id.*
[54] *Id.*

Case No. 1:15-CV-482
Gwin, J.

functioning is not consistent with someone who is allegedly totally disabled."[55]  The ALJ

also pointed to Plaintiff's continual reporting to her doctor that the medications were

generally working to keep her symptoms under control.[56]  Substantial record evidence

supported the ALJ's credibility conclusion.  The ALJ properly considered the steps in the

analysis under 20 C.F.R. § 404.1529.

Plaintiff's arguments to the contrary are unavailing.  Plaintiff relies on *Hawk v.

Astrue*,[57] which states that daily activities of "household chores" and "laundry" are not

comparable to "typical work activities" and thus should not be the basis for a credibility

determination.  However, *Hawk* is distinguishable.  Plaintiff's description of her daily

activities directly related to issues such as standing, walking, lifting, and hand

manipulation, which are relevant to the residual functional capacity analysis.  Daily

activities are properly considered, and there is no requirement to exclude them

altogether.[58]   In *Hawk*, the court's concern was the de minimis nature of the supposedly

telling daily activities.  Here, the ALJ's conclusion is supported by substantial evidence

in the record.


*D. Vocational Expert*

Finally, Plaintiff contends that the ALJ erred in relying upon the vocational

expert's testimony.  Plaintiff says the vocational expert's hypothetical was incomplete.[59]

Plaintiff contends the hypothetical was inadequate because of the ALJ's "errors regarding

the inadequate weight afforded to treating rheumatologist and the determination of

---

[55] *Id.*
[56] *Id.* at 22.
[57] 2012 WL 3044291 (N.D. Ohio July 25, 2012).
[58] *See Calvin v. Comm'r of Soc. Sec.*, 437 F. App'x 370, 371 (6th Cir. 2011).
[59] Doc. 14 at 24.

Case No. 1:15-CV-482
Gwin, J.

Plaintiff's credibility."[60]  As explained above, the ALJ properly discredited the opinions

of Dr. Kuchynski, and properly assessed Plaintiff's credibility as to her subjective

complaints.  As a result, Plaintiff's arguments as to the inadequate hypothetical question

fail.[61]

### IV.    Conclusion

The Court **ADOPTS** the recommendation of the Magistrate Judge and **AFFIRMS** the

denial of benefits by the ALJ, except as to the effect of failing to analyze Plaintiff's case under

Listing 14.09.  On this issue, the Court **REMANDS** the case for further consideration by the

ALJ.

IT IS SO ORDERED.

Dated: March 7, 2016                              s/          *James S. Gwin*
                                                  JAMES S. GWIN
                                                  UNITED STATES DISTRICT JUDGE

---

[60] *Id.*
[61] The Court agrees with the full analysis provided in the R&R.  Doc. 20 at 26-28.